## FOSDICK v. GOODING & AL.

If the husband aliene to two in severalty, and die, the widow's dower is to be assigned out of each distinct parcel of the land.

So if he aliene to one, and the grantee afterwards convey in separate parcels to several.

Tenants in severalty, of distinct parcels of land, cannot be joined in a writ of dower.

In dower, *several tenancy* must be pleaded in abatement: *non-tenure* may also be pleaded in bar.

*Dower unde nihil habet*, wherein the plaintiff demanded against the defendant *Gooding* and *Ann Graffam* her just and reasonable third part of a certain messuage or parcel of land in *Portland*, whereof she alleged herself to be dowable of the estate of her late husband *Nathaniel F. Fosdick* deceased.

In a case made for the opinion of the Court, it was agreed that *Nathaniel F. Fosdick* was seized in fee of the premises described in the declaration in his lifetime, and during his marriage with the plaintiff;—that the *United States* afterwards, and before his death, extended their execution on the same, in part satisfaction of a judgment recovered by them against him, by which the fee passed to the *United States;*—that the *United States* afterwards sold and conveyed the same in fee to *Josiah Paine*, who conveyed the same in fee to *Caleb Graffam* deceased, late husband of *Ann Graffam* one of the tenants;—that said *Ann*, after the death of her husband, and before the decease of *Fosdick*, had one third part of the premises set off to her in dower;—that *Gooding* purchased the *whole* estate of *Caleb Graffam*, including the reversion of dower, and was in the actual occupation of the other two thirds of the premises;— and that in that manner *Gooding* and *Ann Graffam* were tenants of the same at the bringing of this action. *Ann Graffam* was defaulted. No plea in abatement was put in by *Gooding;*— and the question hereupon submitted to the Court was—" wheth-

Fosdick *v.* Gooding & al.

er the demandant is now entitled to maintain her action against the tenant *Gooding,* jointly with the said *Ann ?*"

The cause was argued at this term by *Daveis* for the demandant, and *Whitman* for the tenant, and continued to the following term for advisement.

Argument for the demandant.

The question turning upon the right of action, the argument for the demandant divides into two considerations ;—first, in regard to the right, and secondly, the remedy.—The consideration of the latter, which without doubt is necessary to be pursued under our own statute, leads also to an examination of the original remedy at common law, of which it is proper to argue that the statute is only in affirmance ; and that the provision of the legislature may be usefully interpreted by the ancient usage.

1. The *right* of the demandant to endowment, against a second dowress and a subsequent purchaser, becomes of importance from the inferences, to which it leads in respect to her *remedy.* The defendant endeavours to maintain a technical argument, (reversing the just principle of juridical reasoning) from the supposed absence of a joint remedy to the negation of a proper right. Whereas, if in consequence of the prior sole seizin of the demandant's husband in the whole parcel, (the fee having neither been divided in the act by which the property was parted from him, nor by any subsequent disposition,) she has become entitled to have one solid third part set off to her in severalty, then the law must grant her an appropriate remedy ; and, whatever principles might apply in other cases, her right of action must be shaped according to the nature of her case.

The right of the wife to dower, though dependent on the seizin of the husband during the coverture, cannot be affected by any act of his; and can only be abridged or destroyed by some act of her own. It does not depend upon the continuance of the seizin.

The first seizin, upon the common principle of priority, gives the first title to dower. Whenever the original right becomes mature, it relates back to the original seizin, unaffected by any intervening occurrence. *Vide 2 Bac. Abr.* 144. *Dower G.* The

seizin of the dowress is considered to be a legal continuation of the husband's seizin, however it may have been intercepted; so that, though when actually endowed she holds at common law of the heir, yet she acquires no new freehold, but is taken to be in *by* her husband and *of* his estate; and thus tenancy in dower is distinguished from tenancy by the curtesy, the former being in the *per*, while the latter is in the *post.*—*Vide* 1 *Inst.* 241. *note* 167.—*Gilbert on Dower* 395.—1 *Inst.* 30. *note* 177. *Hal. MSS. citing* 5 *E.* 3. *Entry* 66 & 38. *Hen.* 6. *Dower* 30.—*Windham v. Portland*, 4 *Mass.* 388. *per Parsons* C. J.

Hence the legal proposition, which is a regular comment on this principle,—that dower defeats descent; so that only two thirds descend in fee; and that a disseizee may enter upon the dowress of his disseizor, after her endowment, although his entry is tolled by the descent cast upon the heir; "for the law adjudgeth no mean seizin between the husband and wife." 1 *Inst.* 240. 241. *note* 167.—*Vide Eldrige & al. v. Forestall & al.* 7 *Mass.* 253.

The same principle, with some limitation, extends equally to purchasers. Dower defeats alienation, as well as descent. It is not necessary to the perfection of this title that the husband should die seized. Though he sell the estate, it is still subject to the dower, as it is not in his power to defeat the right, which was inchoate in his life time; and, when it becomes consummate by his decease, the title *overreaches the alienation. Vide* 1 *Inst.* 32. *a.* 2 *Black. Com.* 132. 2 *Saund.* 45. *note* 5. 9 *Mass.* 367.

The legal operation of this doctrine, that the original seizin of the husband (to which the prior title to dower, whenever it attaches, is reunited,) entirely overreaches and defeats every subsequent seizin, capable of being acquired in consequence of his disposition or death, is to create in regard to land subject to dower, though only as an inchoate right, such a lien or liability, that the heir or purchaser acquires therein but a base or qualified estate. In such portion he possesses only a reversionary interest. " Now upon the matter, he hath but a reversion dependent upon a freehold." 1 *Inst.* 31. *a.*

Some partial modification of this principle seems to take place in regard to purchasers; occasioning a distinction, which is established between their respective rights, or rather the

Fosdick v. Gooding & al.

rights, which they are respectively capable of transmitting to their wives, in lands previously subject to claims of dower; constituting the rule of *dos de dote*. According to the definition of this doctrine at common law, the wife of an alienee may be endowed of lands formerly set off in dower, but the wife of an heir may not.—See 1 *Inst.* 31. *Perkins, sec.* 315. 316. 4 *Rep.* 122. *Bustard's* case. *Fitz. N. B.* 351. *H.* 2 *Saund.* 45. *note* 5. 9. *Vern.* 220. 221. 231. *Dower G.* 16. 17. 18. & *G.* 3. 2 *Bac. Abr.* 138. *Dower E.* In the words of *Bustard's* case (4 *Rep.* 122.) "dower tolls the estate, which descends by law, but not the estate gained by purchase."

It may not be necessary, to constitute a title to dower, that the husband should be absolutely seized of an indefeasible estate; and of a defeasible estate the wife may have dower, until the estate be defeated, according to *Perkins, sec.* 420. It is also decided, that the widow of a devisee may have her dower in the whole of the land devised, notwithstanding a quiescent liability to dower. *Hitchins v. Hitchins,* 2 *Vern.* 403. cited. 1 *Cruise* 153. And such an assignment may be sufficient, until it is subverted. For the superior inchoate claim may never become consummate by survivorship of the wife; or the subordinate title may be secured against disturbance by the covenants of the former husband in the conveyance to the latter.

Still such title, can only be compared to the imperfect species of estate gained by the levy of an execution on land under previous attachment, or to the lien of a second mortgagee, which avail until they are avoided. That the elder title to dower is perfectly paramount in its nature, and must prevail whenever it comes in conflict, has been recognized by the Supreme Court of *New-Hampshire* in the case of *Geer v. Hamblin.* So that it may be said that there can be but one proper title to dower in the same parcel of land. See *Co. Lit. sec.* 54. which notwithstanding the apocryphal character attributed to it by *Coke,* who says " it is evident from the context, that this shaft never came out of *Littleton's* quiver of choice arrows," is cited with respect by *Brooke, Dower pl.* 80.

It is perfectly settled by the ancient authorities, that an elder dowress whenever her title becomes consummate, may maintain an action against the widow of her husband's alienee, who has

been first endowed, for her dower in the whole of the land. *Vide* 1 *Inst.* 42. *a.* and the case of the *Parises*, 5 *Edw.* 3. *Vouch.* 249. cited in *Bustard's* case, 4 *Rep.* 122; more succinctly stated in note 181. to 1 *Inst.* 31. *a.* from *Hal. MSS ;*—and see *Rol. Abr.* 677. cited 2 *Bac. Abr.* 138. *Dower E.*

Therefore the perfect and paramount right of a prior dowress to endowment over a second, is well established by law and admitted by the default of one of the tenants.

Again; from the attraction of the seizin of the wife, after she is endowed, back to the original seizin of the husband, it follows, according to the consequence stated in the books, that she is in exactly of his estate.

Therefore of lands holden by him as tenant in common she can only be endowed in common, and not by metes and bounds, as she can have no other estate than her husband had. 1 *Inst.* 37. *b.* 2 *Bac. Abr.* 137. *Dower D.*

Upon the same principle, where the husband was sole seize the wife shall be endowed of a solid portion by metes and bounds. Dower is defined *de quocunque tenemento tertia pars.* 1 *Inst.* 33. *b.*—This method of endowment is denominated " according to common right." 1 *Inst.* 30. *b.* 32. *b. &* 39. *b.* Common right gives the widow the third part of each several parcel, messuage or manor by metes and bounds. 1 *Rol. Abr. H. pl.* 6. 682. 683. 684. 2 *Bac. Abr.* 134. *Dower D.* 2. and see *Rutledge C. J.* in case of *Scott,* 1 *Bay's Rep.* 507. *S. P.*

Where dower is assigned by the sheriff he is bound to assign a third part of each manor, messuage, &c. The heir may assign one parcel in lieu of one third of each. 1 *Cruise* 163. *Title Dower, ch.* 4. The distinction is, that the dowress may accept a certain parcel in lieu of her proper portion of each; but she cannot be compelled to compound her right. This obvious distinction may serve to reconcile a variety of apparently conflicting cases. Any mode of endowment, which deprives a dowress of an entire portion in each estate of her husband, is contrary to common right, and not favoured at common law.—The idea of her undertaking to pick out of distinct parts of the same parcel is scarcely contemplated, certainly not sanctioned, by the common law. " One shall not have two writs of dower *unde nihil habet* at the same time in the same vill," &c. by *Shard.* 13. *Ed.* 3. see *Fitz. N. B.* 348. *note a.*

Fosdick *v.* Gooding & al.

Such a capricious fancy can no more be indulged to the dowress than it can be exercised in regard to her. Where, for instance, the sheriff undertook to assign to the demandant for her dower of a house, the third part of each chamber and returned that he had chalked it out to her ; it was held an idle and malicious assignment, and he was committed for it, for he ought to have assigned her certain chambers or rooms thereout. See *Palmer* 265. 2 *Bac. Abr.* 135. *Dower D.* 2.

Again it is laid down, that the assignment of dower must be absolute, and not subject to any exception, qualification or reservation whatever ; as the dowress " comes in the *per* by her husband, and is in continuance of his estate, which the heir or tenant are but ministers or officers of the law to carve out for her ;" and accordingly all such attempted modifications of the perfect right are treated as totally abortive. See 2 *Bac. Abr.* 135. *Dower D.* 2. and cases there cited.

The only exception, that can be suggested to the absolute right of entire endowment in estate, of which the husband was sole seized, may be where he by his own act severs the estate, and divides the land into parcels by different alienations. For there is thus created a severance of that seizin, of which her's is only a continuation. Such seems to be the effect of the decision of *Potter v. Wheeler,* 13 *Mass.* 504. But it was contended on the part of the demandant, that the exception was to be restrained by this rule, and not extended to any subsequent subdivisions either by heirs or alienees ; over all which her seizin rides ; and from which her title is protected, by its relation to the seizin of her husband. In the present case however, there has never been any severance of the estate ; the whole fee having passed out of *Fosdick* at once, and the whole title having passed to *Gooding,* as it was in *Graffam,* who had *Fosdick's* estate.

Moreover it rather strengthens the argument in favor of the entirety of the right, that where there are several feoffees, a certain portion may be assigned in dower by one in discharge of the whole. Though doubted by *Coke,* how the other feoffees could plead such an assignment, not being parties to it, 1 *Inst.* 35. *a.* yet *Perkins, sec.* 402. evidently considers it clear that they may, and that it operates as a general discharge.

The doubt, as affecting the right, was of a rather technical description. The right was of a real nature upon the land itself, as much as of a personal character against the purchasers.— Several feoffments must certainly mean of the same land; otherwise such an endowment would be against common right, which could be available only by consent, not at all affecting the legal right independent of the amicable arrangement. *Vide Viner Abr.* 261. *Dower Z.*

The main reason why dower should be assigned in a compact state is contained in the definition of the estate; viz. a provision for the benefit of the widow and younger children, to whom it must necessarily be more beneficial in such shape.

This conclusion is reinforced by a consideration of the inconveniences flowing from a different method, which may be illustrated by examples arising out of the present case. The last dowress happens here to be first endowed.—Suppose for instance, that the right of *Paine's* wife, not having been relinquished, should have been matured before the demandant's. According to the argument, the second dowress (*Mrs. P.*) would have drawn one third of *Mrs. Graffam's* third, together with one third of *Gooding's* two thirds for her dower, in separate portions. Then the demandant would be obliged to take one third of each residue left to *Gooding* and *Mrs. Graffam*, and one third of each of the two parts set off to *Mrs. Paine.* In the rapid transfer of real estate in commercial countries these divisions might be multiplied almost beyond imagination; and in the course of things, not observing the order of nature adopted in the law of descent, accumulate in such a manner that the elder dower might ultimately be compounded of an infinitude of fractions. Add, that "*privileges,*" which are generally secured to dowresses in assignments, would form another fruitful, if not ludicrous, source of subdivision. And what reason can there be, that after the decease of all the dowresses, who might have been endowed before though their titles were after hers, her dower should be holden to stand in this distracted state? Or what remedy could there be to consolidate it?

As a summary of the argument, so far as it has proceeded, it is apparent, that the prior right of dower supersedes any titles capable of being acquired to any portions of the land upon

Fosdick v. Gooding & al.

which it is a lien, subsequent to the conveyance of the fee by the husband of the first dowress, inasmuch as her right is of a post-liminary character ; and such other claims are merely in the *post* while she comes in the *per*. Being in of the estate of her husband, it follows that she is to be endowed of an entire third part of every separate parcel, of which he was sole seized. And as her seizin, being a legal continuation of his, defeats every subsequent seizin, it is a clear consequence or necessary corollary of the proposition, that it equally defeats every future variety of such seizin or intermediate mode of possession. If therefore the demandant's right to dower defeats *Gooding's* seizin, it also defeats *Graffam's*, out of which that of his grantee and that of his widow are equally derived; and especially the seizin of the latter, whether she is considered as in by the one or holding of the other.

The seizin of both defendants being thus defeated in regard to the demandant, and they being tenants of the premises in actual possession, it is entirely immaterial as it respects her in what capacities or proportions they may contend to claim, or in what respectful relations they may agree to recognize each other. Their pretensions to resist her title being dissolved by its transcendancy, it is simply sufficient for her that they remain on the land, and are not disposed to assign her dower in a satisfactory or legal manner. They are alike interlopers, and can set up no shield to protect each other by their mutual intrusion.

By these considerations the ground seems to be cleared for the action of the demandant. The legal remedy should be adapted in correspondence to the legal right. And that principle will authorize her to join the defendants.

2. *In regard to the remedy* :—it is a general rule in real actions, that all persons, who are on land demanded, should be made defendants, as they may have rights, and have the privilege of protecting themselves against a judgment by disclaiming any interest.

It was said by *Lord Kenyon* in *Mitchell v. Tarbut*, 5 *D & E*. 651. that " where there is any dispute about the title to land, all the parties must be brought before the court."

The rule extends to all personal actions arising *ex delicto*, whether trespass, trover or case, of which real property is the root. *Vide* 1 *Saund.* 291. *notes.* 1 *Chitty* 71. 76.

In real actions, writs of entry, &c. generally, it is imperative, that all who claim the lands demanded jointly in any manner, must be made defendants; and the omission of any may be pleaded in abatement.  *Booth* 131. 134. 178. 179.  1 *Chitty* 71.— And there seems to be no distinction in this respect between dower and other real actions.  If the lands, in which dower is demanded, are claimed by one, he alone can be sued; if by several jointly, all must be sued.  At common law, the writ of dower must be brought against all the tenants of the freehold or persons having a freehold interest.  3 *Chitty* 593. *Vide Com. Dig. Pleader* 294.  The omission of any one of the tertenants in an action of dower is matter of abatement.  See *Viner's Abr.* 275. *Dower L. a.* 9. where " in dower by several *præcipes* the name of one of the tenants was left out in the clause *unde quæritur*, and also in the summons; by which it was abated against all."  Yet this plea applies in general only to tenants in common, who would seem on the other hand not to be properly liable to several *præcipes*.  It appears therefore to be a fair inference, that all who are on land, in which dower is demanded, of whatever estate, are jointly liable to the action.

There may be an exception, where several are in possession by distinct titles under different grants from the husband himself; and there ought perhaps in such separate tenancies to be separate actions.  It may however be observed that sole or several tenancy is not noticed as a plea by *Sellon* (*Vide vol.* 2. 299 ;) and misjoinder in that case can only be matter of abatement.

There are numerous precedents, both ancient and modern, for joining several tenants in the same action in a writ of dower.  If little notice is taken in them whether the tenants held by different titles, it only manifests of how little importance the distinction was deemed.  As a general remark applicable to the cases, the seizin of the defendants being defeated by the demandants, its relative character became very immaterial.

Several instances occur, in the old books, of actions of dower by several *præcipes* against several tenants, all included in one writ.  *Vide Pasch.* 7. *Hen.* 6. *fol.* 33. 34.  *Viner Dower O. a. pl.* 15.  Dower against two.—Dower by one *præcipe* against *W.* and by another *præcipe* against *R.* and no objection taken on that score.  *Viner Dower M. a. pl.* 2.  As the practice on this point

is apprehended to exist in *England,* when the demandant comes to count, the demand is rendered joint against all ; and the judgment is also joint.

In *Rastall, Judgment in Dower pl.* 3. there is a *joint* demand against four, and judgment against the four on *cognovit actionem.*

*Hil.* 5. *Ed.* 3. *fol.* 10. *pl.* 21. " Feme brought dower *per divers præcipes versus plusors.* And as to one *præcipe, Stanf.* said for him against whom the writ was brought, that he had nothing but as guardian, yet not named guardian, &c. And as to another *præcipe, Trew.* said that she had demanded a moiety of part and a third of the residue, yet all in one vill," &c.--where it appears, that they defended in different capacities, pleaded distinct pleas and exhibited no connexion or privity ; yet were joined in one action.

A stronger case is stated in the Year-book, *Hil.* 39. *Ed.* 3. *fol.* 4. where the defendants in such an action evidently had distinct estates.—This was dower by several *præcipes* against two women. One prayed the other in aid, and said they were parceners and *had made partition,* and aid was granted. Although their original title was the same ; yet they had distinct rights as coparceners, and by the severance of their estate, each had become seized in severalty.

*Fitzherbert* is express, that a woman shall not only have a writ of dower in *London* against several tenants by a several *justicies* in one writ, but that she shall also have her writ of dower (viz. at common law) against several tenants by several *præcipes,* all in one writ. This is found at the conclusion of his chapter on Writ of *Dower, Unde nihil habet. F. N. B.* 348. (148.) The form of expression is not joint tenants, tenants in common or coparceners but *several tenants.* The phrase " several tenants" implies several titles ; and it may be inferred from the method of proceeding against them (by several *præcipes*) that they held in severalty ; though that may be immaterial.

To the same point may be cited the more modern authorities of 3 *Ld. Raym.* 151. *Lutw.* 734. S. C. where there were several defendants, and the count was general against them all. Although it may not distinctly appear upon the face of these reports, whether the several defendants were tenants of different portions, yet that conclusion is more likely than the reverse. There

is no reason to suppose they were tenants in common. But the very silence of those authorities on this point is an emphatic comment on the insignificance of the distinction. The more remarkable, as the elder authorities were sufficiently apt in taking pertinent distinctions.

But it is insisted for the defendant on the authority of *Merrill v. Russell,* 1 *Mass.* 469. that " not tenant" is a good plea;—which is unquestionable, whether under our own statute or at common law. Further, forms are found in *Morgan,* transcribed in later books on Pleading, from which is maintained the right of the defendants to plead sole tenure as to part, and non tenure to the residue.

Nevertheless it appears to want the sanction of respectable authorities to determine how far *non tenure of parcel* is proper to be alleged in answer to a writ of dower ; for it is contrary to the policy of the provision to permit it to be curtailed or eluded in such a manner. *Vide Viner* 275. 276. *Dower L. a.* 5. 12. according to which the demandant may be admitted to maintain, that *Gooding* is tenant enough for her demand, notwithstanding his supposed non tenure of the parcel in *Mrs. Graffam's* possession ; and that for that purpose it is not for him to deny that he is fully so.

At all events, as far as this rule of pleading has any operation, it is conceived to be restricted to those cases where there has been a severance of the fee by the husband himself ; and that it is not to be construed to defeat the action of dower in any case where the defendant relies on a subsequent partition. The 3 *Chitty,* 601. where an opinion is founded and expressed upon the form of the pleadings, is not clear, how the separate tenancy originated in this respect.—Such a plea accordingly is not supposed to be applicable in the present case, where there has never been any proper severance ; less is it important to *Gooding,* who is yet seized in fee of the whole estate.

A further argument in favour of maintaining a joint action against the present parties arises in consideration of their *privity.* Both derive their titles from *Graffam. Gooding,* under him, is seized in fee of the whole estate of *Fosdick,* subject to dower ; while *Mrs. Graffam* has a freehold in one third, of which *Gooding* holds the reversion. Her seizin is a continuation of her

Fosdick v. Gooding & al.

husband's. In regard to her, *Gooding* is the representative of *Graffam* :—so that, in case of her eviction, he would be liable to make a new assignment; and in case of his own eviction of any portion, as for example by a recovery against him under an elder title in dower, his indemnity would be open upon the warranty of *Graffam.*

That the operation of this privity, between dowresses and the representatives of their husbands, extends equally to the heirs and alienees; *Vide* 5 *Edw.* 3. *Vouch.* 249. 4 *Rep.* 122. 1 *Inst.* 31. *note* 181. *Litt. sec.* 54. and *Rol. Abr.* 677. before cited.

Such is the privity in this respect between heirs and feoffees, that where there are several of the latter, any of whom are sued in dower, they may vouch the heir, and he may plead an assignment made by himself. 1 *Inst.* 35. *a.* And it appears, that even the alienee may plead such an assignment by the heir. *Vide Moor* 26.

The consequences of this privity extend further to those remotely interested in the estate. A release of the right of dower to a remainder-man shall enure to the tenant for life; and the remainder-man or reversioner may in like manner avail himself of a release to tenant for life. See 8 *Rep.* 299. *Altham's case.* 2 *Bac. Abr.* 141. *Dower E.*

The dowress is described at common law to be attendant to the reversion dependant on her estate for the services incident to it upon the feudal principle; and it is said that if the reversion be granted, the tenant in dower may also be attendant to the grantee. *Perk. sect.* 424. 425. 427. 9 *Rep.* 135. 2 *Bac. Abr.* 145. *Dower H.*

By the statute of *Gloucester* 6 *E. I. c.* 7. and by the adoptive provision of our own of 1783. *c.* 40. *sec.* 3. the estate of tenant in dower is forfeited to the reversioner for waste.

Again, it is a general principle, that if the tenant be only seized for life, he ought to pray him in the reversion or remainder in aid to defend the inheritance, and if he do not, it seems in strictness, according to Sergeant *Williams*, to amount to a forfeiture. 2 *Saund.* 45. *c. note.*

And the reversioner ought to have an opportunity to defend against a claim of dower. 9 *Viner* 286. *Dower M. a.* 62.—In dower, the tenant informed the Court, that the reversion is in

one, who ought to be received to save his title; and the Court ordered him to plead at the return of the *petit cape.* Lord *Morley's case,* 2 *Brownl.* 122.

Wherever there is a reversioner therefore, that may be joined, it is always desirable to do it, as it saves the delay of vouching and praying in aid. It is expedient to avoid delay in actions of dower. The reason assigned is, that the widow has nothing to live upon in the mean time. Therefore in *unde nihil habet* no protection is allowable at common law, as it might starve the demandant. 1 *Inst.* 131. *a.* 9 *Viner's Abr.* 279. *Dower M. a.* 10. And all dilatory pleas in dower are discountenanced on the same principle. *Barnes' Notes,* 2. *Foster v. Kirkley.* 2 *Saund.* 44. *note* 4.

But it is made a question, whether a party in the situation of *Mrs. Graffam* has such an estate, as to be capable of assigning Dower : And it is said that guardian in socage, tenant by statute merchant, statute staple or *elegit,* or lessee for years cannot assign dower. To this point *Perkins sect.* 403. 404. is cited from 2 *Bac. Abr.* 133.

This objection is obviated by joining the reversioner, upon the ground before stated, according to several valuable antient authorities.

*Year-book,* 1 *Edw.* 3. *fol.* 2. *pl.* 7. is a writ of dower against tenant by *elegit* alone. It was argued, that *in favorem dotis* a writ lay against a tenant for years; and the fact, that it lies against guardian in chivalry was urged as a reason;—but in the end the parties were advised to bring a new writ against the heir and tenant by *elegit* jointly ; and plaintiff became nonsuit.

The result of this recommendation is visible in the subsequent *Year-book,* 2 *Ed.* 3. *fol.* 15. *pl.* 11. Writ of dower against tenant by *elegit* and the heir ; and the heir making default, the tenant by *elegit* vouched him and pleaded his tenancy ; and seizin was adjudged to the demandant; and the voucher entered on the roll ; and the sum of the recognizance, and the whole manner of the tenancy, in order to save the estate of tenant by *elegit.*

The reason of entering the matter in this manner upon the record seems to have been, that as the tenant was entitled to the estate until his debt was paid, the term ought to be extended in

Fosdick v. Gooding & al.

proportion as the quantity was diminished.—It may also be observed, that the estate of tenant by *elegit* is holden by metes and bounds (See *Jacob's Dict. Art.* ELEGIT) as the defendant, who is only tenant for life in the present action, holds her part.

The same point is supported by 3 *Lev.* 168. *pl.* 219. *Williams v. Drew*, cited 9 *Viner* 285. *Dower M. a.* 53. Dower against *W. & D.*—*W.* made default. *D.* surmised that he was a lessee for fifty years under the demandant's husband, and suggested that the action was brought by covin to make him lose his term, and prayed it might be protected. And *per tot. cur.* it was granted. Moreover they held clearly that upon the default of *W.* judgment could not be rendered for a mere moiety, *the matter trenching to the whole.* So the term of *D.* was sustained, subject to the dower.

These authorities were argued to be sufficient to support the action against *Mrs. Graffam* as the mere tenant of a term, and *Gooding* as the reversioner of her part, as well as against him also in respect to the other two thirds in his sole seizin; for in the case from the Year-books the heir must have holden the other moiety in his own right as well as the reversion of that holden by *elegit.*

Again, the reason assigned why tenants of terms by *elegit,* &c. for example, cannot assign dower; viz. that they have not an estate large enough to answer the plaintiff's demand, as none can assign dower but those who have a freehold, &c. does not apply to the present case; as *Mrs. Graffam* has a freehold.

The action may also be supported upon the statute of 1783, c. 40. *sec.* 1.; which provides that the writ of dower may be " brought against the tenant in possession, or such *persons* (in the plural) who may have or claim right or inheritance in the same estate, in manner and form as the law prescribes." The concluding clause, it is probable, does not relate exclusively to the form of process; but may be understood to give a declaratory character to the provision; consonant with the principle of the common law, stated 3 *Chitty* 593, that the action must be brought against all having freehold interests. And according to the construction put upon the statute by the Supreme Judicial Court of *Massachusetts* in the case of *Parker v. Murphy,* 12

*Mass.* 485. it is required to maintain the action, that the tenant should be of the freehold at the time it is brought.

Both defendants are tenants within the statute. *Ann Graffam* is in possession of one third part, claiming right, and having her estate assigned to her in due form of law. Of that proportion against *Gooding* she was rightfully endowed. Her dower is only liable to be defeated by the demandant. She is then entitled to a new assignment against him, and he to a writ of admeasurement against her; though he may not be able to contest her present right to retain the whole of her freehold, until the recovery of the demandant.

*Gooding* being seized of the whole in possession or reversion, subject to as many rights of dower as remain unrelinquished, it is important that he should be made a party to defend his own estate. It is a benefit to him to be joined; as otherwise *Mrs. Graffam* might object against a process of admeasurement, that the present demandant was not dowable; from which she is now precluded.

No inconvenience arises from such a joint demand, because the tenant in dower may disclaim as to all the residue, under the statute of 1795. And the reversioner may show his estate; so that the rights of all parties may be secured.

In what other manner could the plaintiff make her demand? To demand of *Gooding* one third of two thirds, and then of *Ann Graffam*, or rather of her and *Gooding*, one third of the other third, would require distinct judgments and executions.—But " *per Brian J.* 13. *E.* 4. 7. *Br. Dower pl.* 73. she cannot have several judgments of one and the same thing, but one entire judgment." And she could not have judgment of a moiety, the matter trenching to the whole.

But the consideration of damages recoverable in dower has been pressed upon the court as an objection to the action, inasmuch as they must be joint against both the parties, while one of them might have been perfectly willing to assign and thereby avoid an action. But, (without regard to the grace with which such a suggestion comes from one party after a default of the other,) the demandant is entitled to her damages for the detention of her dower. And if she is entitled to a joint action, she is also entitled to have her damages jointly assessed,

Fosdick *v.* Gooding & al.

The damages are incidental; and it is an inversion to argue against the action from the assessment of damages. There is no novelty however in joint damages. It may be an inconvenience, to which all must subject themselves, who agree to be associated for any purpose by which they may be mutually exposed to them. If they are not equally *tort feasors*, they may make an apportionment of them among themselves upon equitable principles;—otherwise it is the fortune of their enterprize.

The topic of damages however is not treated as of the gravest importance in its influence upon the rights of the dowress, by *Jackson J.* in delivering the opinion of the court in the case of *Parker v. Murphy*, 12 *Mass.* 487. In that case it was considered, that the damages might be recovered against the grantee of an heir, upon whom a demand had been made, notwithstanding the grantee should have never heard of the demand or the widow. For if the purchaser knew of the unextinguished right, the price would be regulated by it. If he were not apprized of the latent title, he must rely for his indemnity upon the covenants; and it would amount to nothing more than a mortgage or any other secret lien, for which he must seek his legal remedy, upon his security.

MELLEN C. J. at the succeeding term delivered the opinion of the Court as follows:

At the hearing of this cause we listened with much pleasure to the learned and able discussion of its merits; and having since examined most of the authorities to which we have been referred, we have at length arrived at what we believe to be a correct and legal conclusion.

In the argument two questions have been presented for our consideration—

1. Was the action rightly commenced against the two tenants *jointly?*

2. If not, can the tenant *Gooding*, the other tenant being defaulted, *now* object to this joinder, and thereby defeat the action, no plea in abatement having been put in?

The statement of facts shews the respective characters and rights of the two tenants, their relation to the demandant, and to each other.

At the commencement of the action they were tenants of the freehold in *severalty*, of distinct parcels of the premises whereof dower was demanded.

Numerous authorities were cited and arguments urged to prove that the seizin of the dowress is, in consideration of law, a continuation of the seizin of the husband, as to priority of right of dower and the mode of assignment.

We deem this principle of law to be well settled, subject to certain limitations hereafter mentioned; and we shall not dwell upon this part of the case, but proceed to the examination of some others, involved in a degree of doubt and uncertainty.

As a consequence flowing from the principle just stated, the counsel for the demandant contends that the original seizin of the husband entirely overreaches and defeats every kind of subsequent seizin that may be acquired after his alienation or death.

Our statutes provide two modes by which a widow may obtain the assignment of her dower; and one or the other of these modes is to be adopted, according to circumstances.

In those cases in which the husband *dies seized*, provision is made for the assignment of dower by the Judge of Probate; and in such cases this course is almost universally pursued. It is a subject peculiarly appertaining to the jurisdiction of the Probate Court,—and in the case of *Sheafe v. O'Neil*, 9 *Mass.* 9. it is considered as the correct mode of proceeding. But the power of the Judge is confined to those cases in which the husband *dies seized*. If, in his lifetime, he had parted with the estate, and the assignee holds and owns it, the jurisdiction of the Probate Court does not extend to it. In such cases, and such only, is it *necessary* to institute a suit at common law :—perhaps we may say that in such cases only can it be *proper* so to do.

It seems to be admitted that the husband, in his lifetime, may, by his conveyance, in some degree *impair* the widow's right of dower, though he cannot *defeat* it :——that is to say—if he should die, not having alienated any portion of his estate, his widow could legally be endowed *in solido* ;—but if he should convey his estate to four different persons, one distinct parcel to each, and die, the widow must demand and receive dower of the four different grantees, in four different parcels ; and this

may essentially *impair the value* of her dower, though not in any degree *lessen the proportion.* The case of *Porter v. Wheeler,* 13 *Mass.* 504. seems to adopt and proceed upon this principle. It recognizes the power of the husband to affect the widow's rights to a certain extent by his act of conveyance, and impair them by qualifying the mode of her enjoyment of them.

The case of *Porter v. Wheeler* goes no further than to declare the effect of a sale and conveyance by the husband of a *part* of the estate, to one person, he continuing to own the residue ; and this is supposed to be essentially different from the case where the husband conveys the *whole* estate to one man, and this grantee afterwards, and in the lifetime of the husband, makes a division of the estate, by selling it to *two persons,* in two *distinct parts.* According to the argument of the demandant's counsel, the widow, in this latter case, might demand her dower against these two after-purchasers *jointly.* The question is deserving of consideration, whether there be any legal distinction in the two cases. Where the husband conveys the estate to two or more in *severalty,* the act is admitted to bind the wife, to a certain extent ;—and the reason is, because it is his act, by virtue of which the partition is effected. Now is it not *his* act, which causes the partition in the other case stated. If the husband sells his estate to *A.* and *B.* in equal parts in severalty, he then *directly* makes the division :—if he sells the whole estate to *C.* who sells it to *A.* and *B.* in equal parts in severalty, then the husband makes the division *indirectly :*—and it would seem that when this second conveyance is made by *C.* to *A.* and *B.* in the lifetime of the husband, the consequences as to the widow, in respect of dower, would be the same. In the one case, the husband divides the estate himself and by his own deed ;—in the other, he sells the whole estate, and parts with all control over it ; and thereby expressly authorises his grantee to divide the estate into as many parcels as he may think proper.

The facts in the case of *Porter v. Wheeler,* and other cases bearing on this point, did not require an examination of the principle of law as to the operation of the husband's deed, except where he made the partition by his own *immediate* act ; but we apprehend the same principle must be applied in the case where the partition of the estate is made by an assignee

of the husband, before the widow comes forward to demand her dower. In both cases it is the act of the husband, mediate or immediate, which creates the severance of the estate, and, to the extent before mentioned, qualifies the rights of the widow.

The next inquiry is, whether the principle which we have been examining is applicable to the case before us. It does not appear that *Fosdick*, the husband of the demandant, ever did in his lifetime alienate the estate in question by any legal act or instrument;—but still he did not *die seized* of it, because the *United States* extended their execution upon it to satisfy a judgment they had obtained against him for a debt which he owed them. He did not redeem the estate within the time by law allowed for its redemption, whereby it vested absolutely in the *United States*. This is a *statute-purchase* of the estate;—differing from a common purchase only in this, that the price was determined by indifferent judges, and the transfer of the fee was not *purely* voluntary:—but the effect of the extent was to pass all *Fosdick's* title and estate in the premises, and his deed could have done no more. Why should any legal distinction exist between the two cases, in relation to the widow's dower ? If the husband can to a certain extent, impair her dower as to the mode of enjoying it, by a conveyance by his deed, why should not a conveyance by extent have the same effect, it being made to satisfy a judgment, and thereby to *discharge a debt which the husband had an unquestionable right to contract.* In regard to the point under consideration, what difference can there be between a husband's contracting a debt of 1000 dollars, and paying it by a piece of real estate which he conveys to his creditor by *deed;* and his suffering himself to be sued for the debt, and the same land to be taken by execution in satisfaction of the debt ? If then the extent be, similar, in its effects, to a deed from *Fosdick* to the *United States*, the question will not be varied by the subsequent conveyances from the *United States* to *Paine*, and from *Paine* to *Graffam;* as these owed their origin to *Fosdick's* acts, in contracting a debt to the *United States*.

Thus, by the act of *Fosdick*, the estate in question was once the property of *Graffam*, whereby *Ann Graffam*, his widow, became entitled to her dower; and her husband dying before

*Fosdick*, that dower has been assigned to her, in virtue of which assignment she now claims and possesses a portion of the premises described in the writ, and *Gooding*, as purchaser, claims and possesses the residue, including the reversion. Each of the defendants is tenant in severalty of a *sufficient estate,*— one owning and possessing a *freehold*, and the other a *fee-simple*.

If this reasoning be correct, it seems to follow conclusively that the tenants were improperly joined, in this action.

But we proceed to examine the cause on other grounds, and independently of the analogies above suggested.

It does not appear in more than one or two of the ancient cases cited, whether the defendants, who were joined in an action of dower, were *several* or *joint* occupants and tenants of the freehold:—as in the cases cited from *Rastall* 235. *Dower.* *Viner, Dower M. a.* 2. 7 *H.* 6. 33. 34. The case from *Fitzherbert*, relied on by the counsel, is open to the same remark. The terms " *several tenants*" do in no wise imply, in all cases, that they were tenants *in severalty*, of distinct parcels. The word " *several*" is often used numerically. The same remark as to uncertainty is admitted by the plaintiff's counsel to be applicable to the case from 3 *Ld. Raym.* 151. The case cited from *Viner* 275. *Dower L. a.* 9. is equally uncertain as to the nature of the tenancy, whether *joint* or *several.* Neither can any thing certain be inferred from the passage cited from the note in 3 *Chitty on Pleading* 593. The words are—" The action of dower should be brought against all the tenants of the freehold." Does this mean *several* tenants? Certainly not.

With this uncertainty before us as to the precise nature of the facts in many of the old cases, it may afford us light to look into books of more modern date. The learning and indefatigable research of *Chitty* entitle him to much respect as a special pleader. In his 3 *Vol.* 601. we are furnished with the pleas in an action of dower against *two persons.* They were submitted to the examination of *Mr. Warren*, who gave the following opinion :———" As there is in this case a *separate tenancy*, there ought " to be *separate actions ;* and the defendants having *severally* " *pleaded* non-tenancy, I think the action ought to be discontin- " ued and new ones brought *against each respective tenant*." The " *non-tenancy*" which each one pleaded must have been as to

*part only* of the premises; otherwise a *new action* would not have been commenced against each. This last cited passage seems to explain the other, above quoted from the same volume.

*Booth*, in many places, speaks of the similarity of the pleadings in actions of dower to those in other real actions.

Some years since, it was usual in writs of entry, to declare against a number of disseizors in one writ, although they were in possession of different parcels of the demanded premises, and each claiming independently of the others. Many causes commenced in this manner, were finally decided;—but in an action pending when the late Chief Justice *Parsons* came upon the bench, he corrected the practice, and by consent of parties all the tenants but one were struck out of the writ. Since that time, it has uniformly been the course of proceeding to commence actions against each tenant who claimed and occupied in severalty. The principle is clearly stated in *Varnum v. Abbot & al.* 12 *Mass.* 480. In this manner the confusion arising from the trial of distinct and different rights in the same action has been avoided, and legal principles and forms of proceeding have been restored. The same convenience results from adopting similar principles in actions of dower. If separate tenants are joined in actions of dower, questions distinct and independent in their nature may require decision. One may plead a release of dower as to the premises he holds in severalty;—another may plead that there has been no demand ever made by the plaintiff;—in fact there may be as many distinct trials as there are parties. Nothing but consent on the part of the defendants can render such a mode of proceeding admissible.

But it is contended that *Gooding* being the owner of the reversion, stands in the place of the heirs of *Graffam*;—that there is therefore such a privity between the defendants, that he ought to be joined in the action with *Ann Graffam*, the widow and tenant in dower; because he would be liable to voucher to save his estate;—and that by such joinder, the delay of vouching would be avoided. But this delay cannot be the ground of any argument; and perhaps, according to our practice, no such voucher would be necessary or proper. The proceedings in our Courts respecting voucher to warrant are essentially vari-

ant from those in use in *England,* either formerly, or at the present day ; and we cannot reason from these with accuracy or safety. With us, the warrantor of the tenant may be vouched ; but yet he is never joined in the action originally, and he need not come into Court after he is vouched. The object in view, and the advantage, in vouching him is that the record of the proceedings and judgment in the action against the tenant, may become legal evidence in an action to be brought by the tenant against the warrantor or his representatives, on his covenants. We therefore do not particularly notice the numerous authorities on this head cited by the demandant's counsel, as we consider the application of them to this cause as, at least, very doubtful. Besides, it should be remembered that *Gooding* owns a part of the estate in fee-simple, exclusive of the reversion, to which the foregoing objection cannot apply.

But if the cases cited from the early *Year-books* did shew explicitly that several tenants, holding distinct parcels in severalty of the lands whereof dower was claimed, were joined in one action ; still there exists an argument with us against such joinder, which did not exist at that time in England.

Before the statute of *Merton,* 20 *Hen.* 3. *chap.* 1. no damages were recoverable in actions of dower, even against *the heir,* in those cases where the husband *died seized :*—and against the assignee of the husband that statute gave no action. But by our laws, damages may be recovered after demand, in all cases, against the person having the legal estate ; as is settled in the case of *Parker v. Murphy,* 12 *Mass.* 485. If then a joint action of dower can be maintained against several persons, claiming and holding distinct parcels, the consequence will be, the assessment of joint damages, in cases perhaps where some of the defendants may be unable to pay their proportion ; and of course those who are of ability must pay the whole, and seek their remedy against one or more co-defendants unable to reimburse them. Besides, it may appear on trial that much larger damages ought to be recovered against some of the defendants than against others.

There is another argument deserving consideration, which tends very plainly to shew the impolicy, if not injustice, of allowing a joint action of dower to be maintained against several

persons holding in severalty parcels of the estate formerly belonging to the husband;—whether they hold as *immediate grantees* under him, or as *assignees* of such grantees;—and strengthens the argument in favour of the principle we would establish. If the husband in his lifetime sold the estate to *A. B.* and *C.* in distinct parcels *without* warranty, each purchaser would estimate the loss which he might sustain should the wife of the grantor survive him, and demand her dower. Or, if the husband sold *with* warranty to each, he could estimate very nearly the sum in damages which each grantee could recover of his representatives, if the wife should survive and demand her dower. Now in the case stated, it is admitted that several actions of dower must be brought. Suppose the husband sold the whole estate to *A.* and he sold it in three distinct parcels to *B. C.* and *D.* If *A.* gave no warranty to either of these purchasers, the price given by each would be regulated in some degree by the liability to dower, and the consequent reduction in value. This diminution could be estimated by each purchaser; and thus he would make his contract with understanding and fairness. But if the principle contended for by the plaintiff's counsel be correct, a joint action might be maintained against *B. C.* and *D.* and the dower be so assigned as to swallow up the whole tract conveyed to *B.* who would thus be left destitute of any remedy, and actually suffer a loss three times greater than he anticipated or had any reason to expect. And if *A.* sold to each *with* warranty, still *B.* might be placed in the same situation, should his warrantor prove unable to indemnify him on his covenants. It is true the chance of future insolvency must always be taken by the purchaser in cases of warranty;—but this is no good reason why a principle of law should be adopted or sanctioned, by which such purchaser should be compelled to incur the hazard of losing three times the amount which was contemplated either by him or his grantor. The inconvenience and injustice in the case last supposed, of a division of the estate by the *grantee of the husband,* are equally as great as in the case where the *husband himself* makes the division by his own deeds;—and it does not readily occur to us what sound reason there can be why the same legal principles should not be applied to both; or why, in either

Fosdick *v.* Gooding & al.

case, an action of dower should, in this State, be maintained against grantees, *jointly.* We cannot perceive any justice or reason in requiring a course of proceedings leading to such results, introducing inconveniences and perplexities, and often producing losses and damage which cannot be repaired.

We do not consider our statute as in any manner altering the common law with respect to the mode of declaring in actions of dower, by using the plural expression "*persons,*" in describing those against whom the action may be brought. The words of the statute may be satisfied by supposing them to mean *all persons claiming right or inheritance in the estate jointly.* But we need not resort to such arguments, because this kind of language is common in statutes where a joinder of different offenders, debtors, or delinquents in the same indictment or action was never contemplated by the legislature.

Under this head we will mention one argument more, which does not seem to admit of an answer.

According to *all* the authorities upon this subject, it is perfectly clear that in real actions, and, among others, in actions of dower, *several* tenancy *may be* pleaded in abatement, and that it is a good plea. This principle seems to be as clearly laid down, as the principle that in actions of *assumpsit* the omission to join all the *joint promissors* as defendants may be pleaded in abatement, and that such plea is good. The authorities as to the plea in abatement of *several tenancy* will be noticed under the next head. They establish the principle that in actions of dower *several persons,* claiming, holding and owning *distinct* parcels of the estate whereof dower is demanded, cannot legally be joined as defendants in the same action. The books shew, with equal clearness, that in actions of *assumpsit* all the joint promissors *must* be joined. A joint action in the one case, and an action not embracing all the joint promissors in the other, cannot be maintained, unless in the real action the exception to the *joinder,* and in the personal action to the non-joinder, has been waived, either expressly or by implication.—This leads us to the consideration of the second question presented by the case.

2. Can the tenant *Gooding now* object to the joinder of the two tenants in this action, no plea in abatement having been

Fosdick *v.* Gooding & al.

filed in the case ;—or, in other words, *must* several tenancy be pleaded in *abatement ?*

In *England, non-tenure* is pleadable in abatement only. *Booth,* 28. *Comyn's Dig. Abatement F.* 14. The same principle was recognized in *Massachusetts* in the case of *Keith v. Swan,* 11 *Mass.* 216. Afterwards in the case of *Prescott v. Hutchinson,* 13 *Mass.* 440. it was decided that a *disclaimer* was good as a plea in bar, having long been used as such ;—and in *Otis v. Warren,* 14 *Mass.* 229. it was decided that *non-tenure* might also be pleaded in bar. If therefore the present action had been commenced against *Gooding* only, and he had pleaded in bar *non-tenure* as to all or a part of the premises described, such plea would have been good here, though not in *England.* As to the plea of several tenancy, it does not appear, by any decisions in *Massachusetts,* to have changed its original character. In the *English* books of authority it is always considered as a plea in abatement. *Booth* 34. *Rast. Ent.* 365. *a.* 6 *Jacob's Dict.* 68. *Comyn's Dig. tit. Abatement F.* 12. " If an action be sued " against *several,* it may be pleaded in *abatement* that they hold " *severally.*" " So in a *mort d'ancestor* several tenancy is a good plea." " So in *dower.*" See also 3 *Chitty* 601. 602. Though

The members of the profession are indebted to the demandant's counsel for the following note of the case cited in his argument, decided in the Supreme Court of *New-Hampshire,* in which the opinion of the Court was delivered by the learned Chief Justice SMITH.

*CHESHIRE, Supreme Court.* } SALLY GEER *v.* WM. HAMBLIN.
MAY TERM, 1808.

DOWER, (writ date *2d September,* 1806.)—the writ in the form prescribed by statute *p.* 153.—The plaintiff *was* the wife of *Shubael Geer, late* of *Charleston* and demands her reasonable dower of a messuage, &c. in *Charleston,* bounded as follows, &c. which was in the seizin and possession of the husband—whereof he was seized in fee during the coverture.—The defendant pleaded several pleas. The third plea in bar was, that on the *1st May,* 1777, at *Charleston* one *John Hubbard* was married to *Prudence Hubbard;*—that afterwards and before the said *Shubael* is supposed to have been seized, viz. the same *1st May,* 1777, the said *John Hubbard* was seized of the said messuage in fee ;— that afterwards, and before the commencement of this suit, viz. *30th May,* 1806, the said *John Hubbard* died and the said *Prudence* survived him and thereby became, and still continued, legally entitled to demand and recover against the defendant *her* reasonable dower of the said messuage, of the en

it is said in the books quoted, that several tenancy and *non-tenure may* be pleaded in abatement, the meaning is that they *must* be. They are classed among those things which may be pleaded in abatement, as distinguished from those which form another class and are pleadable in bar. By omitting to plead his *several tenancy*, the tenant *Gooding* must be considered as having waived all objections to the form of the action, and he is now precluded from urging them on the trial of the merits.

dowment of the said *John Hubbard* her husband which the defendant is ready to verify, &c. Demurrer and joinder.

C. *Ellis*, for the Defendant.

*Chamberlain*, for the Plaintiff.

The opinion of the Court was now delivered by the Chief Justice.

The question is whether the matter set forth in the plea in bar, viz. that another widow,—the widow of one prior in seizin, *has a claim* of dower in the same lands,—is a bar to the plaintiff's recovery ? To constitute a good bar it must be shewn that the plaintiff has no right. That two widows should be endowed out of the same messuage is no novelty. (See case put by *Swift J. p.* 254, 5.) The case put by *Perkins, sec.* 315, and noticed by *Lord Coke* in his commentary on *Littleton,* shews that this may be the case in *England.* ( *Co. Litt.* 31. *a. Watk.* 49. *London* 2d *Ed.* ) This plea is therefore bad, unless it can be maintained that *Shubael Geer,* the husband of the demandant, had no seizin in deed or in law during the coverture in the premises described in the writ, and that is the matter to be tried on the first issue. The only objection stated to his seizin in this plea is, that another person was seized before him, whose wife is entitled to dower. But how does this shew that *Shubael Geer* had no seizin ?—To constitute a claim to dower it is not necessary that the husband should be seized of an *indefeasible estate,* though *Shubael Geer had* such an estate. *Lord Coke* puts the case of grandfather, father, and son ; and the grandfather is seized of three acres of land in fee, and taketh wife and dieth ;—the land descendeth to the father, who dieth, either before or after entry, the wife of the father is dowable ;—clearly the wife of the grandfather is dowable. (3 *Bac. Abr.* 367. *Perkins* 420. 1 *Inst.* 31. *a. Perkins sect.* 315. *F. N. B.* 351.) Here there are two widows dowable. The grandmother will have an acre for her dower ; and the wife of the father shall have a third of the remaining two acres, because her husband was not seized in deed or in law of the part which constitutes the dower of the grandmother. Her title to dower is paramount the title of the father. She is *in* from her husband and not from the heir. Her estate is, as it were, the continuance of his ;—that is— the husband's—the heir has only a reversion. *Watk.* 84. Her title is more favoured than his by descent, though the heir is an object of favour in the English law. Instantly on the death of the grandfather, the father was seized of the two thirds. Of the one third his seizin was defeated by the grand-mother's title to dower. As to this he has only a reversion expectant upon a freehold, which is not a seizin which entitles the wife to dower. When the

Fosdick *v.* Gooding & al.

The authorities on this point are clear, and they settle the question in favour of the demandant.

We might have decided this last point alone, sparing ourselves the labour of examining the other and principal question.

---

grandmother dies, the father's wife shall not be endowed of this one third, and this is a case where *dos de dote peti non debet.* Here the father's title was by descent, and two widows are endowed in the same messuage, one of one third, and the other of one third of the residue, that is, two thirds. (*Watk.* 94.)

But the case farther supposes that the grandfather had *enfeoffed* the father.— In this case the wife of the grandfather on his decease would have for dower one third of the whole, and the wife of the father one third of the remaining two thirds. And in case of the death of the grandmother before the father's wife she would have dower in the other third, that is, *dos de dote.* For here the husband was seized and his seizin is not defeated by his mother's dower. (*Watk.* 96.) He is not *seized so as* to defeat the right of the grandmother to dower; but *so as* to give his wife title to dower in the whole, when the grandmother's title to dower ceases. *If the father die first and his wife have her dower assigned, the grandmother can maintain her writ of dower against the mother.* (*Watk.* 98. &c.) Apply that to this case. We may suppose *John Hubbard* conveyed to *Shubael Geer,* and he to defendant. On the death of *John Hubbard* his wife was entitled to dower, because *John Hubbard* was seized. On the death of *Shubael Geer* his wife was entitled to dower, for the same reason. But as her husband was seized subject to *Prudence Hubbard's* claim to dower that claim must be satisfied. *Sally Geer* will therefore be entitled to one third of two thirds and one third of the remaining one third— that is, of the whole—on the death of *Prudence Hubbard.*

It would seem therefore clear that it is immaterial as to the rights of the parties which died first, *John Hubbard* or *Shubael Geer.* The *after-seizin* is good except *quoad* the *prior* claims to dower.—Supposing this to be the present case, the plaintiff is entitled to recover her dower one third of the whole, liable to be reduced to one third of two thirds *if Mrs. Hubbard* should be pleased to demand her dower; which it is not likely she will, the estate of her husband being solvent. But this is a matter of which *William Hamblin,* the defendant, cannot avail himself. *As against him* the demandant has a good claim to one third of the whole. If this should be reduced by *Mrs. Hubbard,* taking her dower one third of the whole, it is an affair that concerns the two widows. I should suppose that the defendant will not be very anxious for such an event, because it will take from him one third and one third of two thirds, that is, five ninths instead of three ninths.

It is absurd to suppose, as this plea does, that the demandant's right to dower when she has in her favor the three incidents, marriage, seizin, and the death of the husband, should depend on the contingency of another—who has also a right—demanding or omitting to enforce her right. Lands, subject to a title of dower, were devised to a person in fee, who died leaving a widow. This widow sued for her dower, and recovered a third part of the whole, without any regard to the title of dower in the widow of the testator, who did not

But as this was fully argued by the counsel we concluded to give an opinion on that also; especially as it may be useful in regulating the practice in future actions of this nature.

*Judgment for the demandant.*

put her claim in suit. Not having recovered her dower it was to be laid out of the case. (*Cruise I.* 153. *Hitchens v. Hitchens,* 2 *Vernon* 403.)

It is strong evidence against this plea that it never was before pleaded. And yet the case must often have occurred. This plea does not state that *Prudence Hubbard* did not join with her husband in conveying. But it admits an after-seizin in *Sally Geer.* There must have been a conveyance of some kind from *John Hubbard;* but as it is stated, that *Prudence Hubbard* has a lawful claim of dower, perhaps it is sufficient. But the plea is bad in substance; the matter set forth is no answer to the demandant's claim.

